UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SPM THERMO-SHIELD, INC.,

    Plaintiff,

v.                          Case No: 2:15-cv-439-FtM-29CM

SICC, GMBH and WALDEMAR
WALCZOK, an individual,

    Defendants.

_____

**OPINION AND ORDER**

This matter comes before the Court on review of Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim Upon Which Relief Can be Granted, and Motion to Quash Plaintiff's Summons for Insufficient Service of Process (Doc. #12) filed on September 2, 2015.  Plaintiff filed a Response (Doc. #15) on September 23, 2015 to which Defendants filed a Reply (Doc. #19) on October 14, 2015. For the reasons stated below, the motion is granted in part and denied in part.

**I.**

Plaintiff SPM Thermo-Shield, Inc. (SPM) has filed a four-count Complaint (Doc. #1) against Defendants SICC GmbH (SICC) and Waldemar Walczok (Walczok) alleging that Defendants impermissibly used test results, certifications, photographs, and other materials belonging to Plaintiff to advertise and market SICC's

products. The underlying facts, as set forth in the Complaint, are as follows:

SPM is a Florida corporation in the business of marketing and selling energy-efficient paint and coating materials. (Id. at ¶¶ 2, 5.) SICC, a German corporation, is a competitor in the coating materials business. (Id. at ¶¶ 3, 12.) Walczok is the Managing Director of SICC. (Id. at ¶ 71; Doc. # 12-2, ¶ 2.) According to SPM, SICC has made multiple sales and marketing presentations in which SICC used SPM's studies, test results, certifications, and photographs to tout SICC products. (Id. at ¶¶ 38-58.) For example, SPM alleges that multiple SICC presentations used photographs of buildings coated with SPM's products while misrepresenting that the buildings were coated with SICC's products. (Id.) SPM further alleges that SICC's publicly-available website similarly misappropriates SPM's marketing materials. (Id.) Based on these allegations, SPM brings causes of action against Defendants for misleading advertising in violation of Fla. Stat. § 817.40 (Count I), false advertising in violation of the Lanham Act (Count II), common law unfair competition (Count III), and deceptive and unfair trade practices in violation of Fla. Stat. § 501.204 (Count IV). Defendants now move to dismiss the Complaint in its entirety for lack of personal jurisdiction or, in the alternative, to quash service of process.

**II.**

**A. Personal Jurisdiction Over Walczok**

Walczok argues that the Complaint must be dismissed as to him because the Court lacks personal jurisdiction. A court is obligated to dismiss an action against a defendant over which it has no personal jurisdiction. Posner v. Essex Ins. Co., 178 F.3d 1209, 1214 n.6 (11th Cir. 1999). Whether a court has personal jurisdiction over a defendant in a diversity case[1] is governed by a two-part analysis. Mutual Serv. Ins. Co. v. Frit Indus., 358 F.3d 1312, 1319 (11th Cir. 2004). The court must first determine whether the exercise of jurisdiction is appropriate under the law of the forum state. Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000) (citing Sculptchair, Inc. v. Century Arts, 94 F.3d 623, 626 (11th Cir. 1996)). If the court determines that the forum state permits the exercise of personal jurisdiction, it must then determine "whether the

---

[1] The Court notes that the Complaint asserts a cause of action under the Lanham Act, which may provide for federal question jurisdiction. However, the Complaint and Plaintiff's Response to the Motion to Dismiss assert diversity jurisdiction only. Therefore, the Court will not address whether it has personal jurisdiction over Defendants pursuant to Rule 4(k)(2), which provides that "[f]or a claim that arises under federal law," service of a summons establishes personal jurisdiction if "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and [] exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2).

extension [of] jurisdiction comports with the due process requirements of the Fourteenth Amendment." Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002) (citing Posner, 178 F.3d at 1214).

Walczok is a German citizen and a non-resident of Florida. Under Florida law, "[a] plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." United Techs. Corp. v. Mazer, 556. F.3d 1260, 1274 (11th Cir. 2009). The Complaint does not contain any specific allegation concerning personal jurisdiction over Walczok, although it does allege that Walczok "directed, controlled, ratified, participated in or was the moving force behind SICC's wrongful activity," and that SPM was harmed in Florida as a result. (Doc. #1, ¶¶ 71-74.) Accordingly, the Complaint presumably intends to allege that Walczok is subject to personal jurisdiction via Florida's long-arm statute as a result of the alleged "wrongful activity" he committed against SPM, a Florida corporation. Defendants made the same assumption, as the Motion to Dismiss argues that neither Walczok nor SICC have Florida contacts sufficient to permit the exercise of long-arm personal jurisdiction. However, in its Response to the Motion to Dismiss, SPM eschews that argument and instead contends that the Court has personal jurisdiction over Walczok because he was personally

served in Naples, Florida on July 23, 2015 as he was leaving a business meeting with SPM.

"As a general rule, Florida courts have personal jurisdiction over nonresidents when that nonresident is properly served with service of process while voluntarily present in the state." Keveloh v. Carter, 699 So. 2d 285, 288 (Fla. 5th DCA 1997). So-called "tag jurisdiction" also satisfies the Fourteenth Amendment's due process requirements because "jurisdiction based on physical presence alone . . . is one of the continuing traditions of our legal system that define the due process standard of traditional notions of fair play and substantial justice." Burnham v. Superior Court of California, 495 U.S. 604, 619 (1990). Simply put, if personal service upon Walczok in Florida was "proper," the Court possesses personal jurisdiction over him. Walczok argues that service was improper because Plaintiff lured him into the Middle District under false pretenses for the purpose of effectuating service.

"Service of process is void if obtained by enticing a defendant into the court's territorial jurisdiction through fraud or deceit, or under the pretense of settlement, whether the matter of settlement was first broached by plaintiff or defendant." Coca-Cola Co. v. Empresa Comercial Int'l de Frutas S.A., No. 96-CV-358, 1996 WL 378856, at *1 (M.D. Fla. July 1, 1996); see also Lisa, S.A. v. Gutierrez, 806 So. 2d 557, 558 (Fla. 3d DCA 2002) (quashing

5

service where non-resident defendants "entered the jurisdiction solely to attend a meeting where, in good faith, they would attempt to provide the financial information which [plaintiff] had been seeking and thereby avert litigation" and plaintiff's "elaborate preparations to serve the defendants [at the meeting] belie any good faith"); Citrexsa, S.A. v. Landsman, 528 So. 2d 517, 518 (Fla. 3d DCA 1988) (quashing service where non-resident defendants "arranged the conference [in Florida] in a good faith attempt to settle their dispute with appellees" and plaintiffs' conduct "including filing the complaint, causing the summons to be issued, changing the location of the meeting, and arranging service prior to the start of the settlement conference, clearly demonstrate[d] that [plaintiffs] never intended to participate in good faith settlement negotiations"); Mallin v. Sunshine Kitchens, Inc., 314 So. 2d 203, 204 (Fla. 3d DCA 1975) (quashing service where after "[plaintiffs] had secured an undertaking by [defendant] to come to this jurisdiction they then proceeded to file a complaint, caused process to issue, and arranged to have it served during the good faith settlement conference").

The parties have each submitted affidavits concerning the events surrounding the business meeting that brought Walczok to Florida. In early 2015 SPM commenced a trademark infringement lawsuit against SICC in Turkey. On July 3, 2015, an SICC employee emailed Peter Spiska (Spiska), President of SPM, regarding the

6

Turkish lawsuit and suggested that Spiska and Walczok meet in New York "to discuss the possibilities of a peaceful co-existence and successful business development in the future." (Doc. #15-2) In reply, Spiska expressed interest in meeting with Walczok and offered to host the meeting in Naples, Florida at his country club. (Id.) SICC accepted the offer and the parties agreed to meet in Naples on July 23rd. (Id.) Walczok avers that the sole reason he entered Florida was to attend the meeting and that he would not have attended had he known SPM intended to serve him while he was in Florida.[2] (Doc. #20-1.)

On July 22nd, the day before the meeting, SPM commenced this lawsuit. (Doc. #1.) The summons issued in connection with the lawsuit lists SICC's address as 4784 Naples Lake Boulevard, which is the address of Spiska's country club. (Doc. #12-1.) The meeting took place at the country club on July 23rd as planned. According to Walczok, while the meeting was ongoing "it appeared that SPM's representatives received a text message . . . [and] [i]mmediately after receiving this alert [they] suddenly terminated the meeting and left the room." (Doc. #12-2.) Walczok

---

[2] After the meeting with SPM had been set, an SICC employee stated that she and Walczok were also planning to attend a second meeting while in Florida. (Doc. #15-2.) However, Walczok explains that the second meeting did not exist and was invented so that it would not appear that he was so eager to resolve the Turkish lawsuit that he was willing for fly to Florida from Germany for the sole purpose of settlement discussions. (Doc. #20-1.)

then left the meeting room and was served with process in the parking lot of the country club as he was walking to his car. (Id.)  Although Spiska avers that he "entered the meeting in good faith, but realistic of the potential that out disputes would not be resolved," neither he nor SPM take issue with Walczok's description of the events immediately preceding service of process.  (Doc. #15-5.)

The following facts gleaned from the parties' affidavits support Walczok's contention that SPM lured him into Florida under false pretenses: (1) SPM requested that settlement discussions take place in Florida; (2) SPM waited until the day before the meeting to file suit; (3) SPM made advanced preparations to serve Walczok at Spiska's country club; and (4) Walczok was served immediately following SPM's decision to abruptly conclude the meeting.  Based on these facts, "the inference can be drawn that the plaintiff's purpose in continuing the meeting until the Marshal could serve process was not to conduct good faith negotiations, but rather was an artifice to obtain service on the defendant." Sunshine Kitchens, Inc. v. Alanthus Corp., 65 F.R.D. 4, 5-6 (S.D. Fla. 1974); see also Coca-Cola, 1996 WL 378856, at *1; Lisa, 806 So. 2d at 558; Citrexsa, 528 So. 2d at 518; Mallin, 314 So. 2d at 204.

Accordingly, the Court concludes that Walczok was enticed into this Court's jurisdiction under false pretenses.  Therefore,

8

personal service of process upon Walczok is quashed and, as a result, the Court lacks personal jurisdiction over Walczok on the basis of "tag jurisdiction." As SPM does not assert any alternative basis for jurisdiction over Walczok, all claims against him are dismissed. Posner, 178 F.3d at 1214 n.6. Furthermore, because SPM contends that it effectuated service of process upon SICC via personal service of Walczok, service upon SICC is also quashed. SPM is granted leave to file an amended complaint should it wish to assert an alternative basis for personal jurisdiction over Walczok.

**B.   Personal Jurisdiction Over SICC**

The law regarding personal jurisdiction in a diversity case is set forth above. Accordingly, the Court will first address whether the exercise of jurisdiction is appropriate under Florida's long-arm statute, and then address whether exercising long-arm jurisdiction over SICC comports with due process.

**1.   Florida's Long-Arm Statute**

The reach of Florida's long-arm statute is a question of Florida law and federal courts must construe it as would the Florida Supreme Court. Mazer, 556. F.3d at 1274. Under Florida law, "[a] plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." Mazer, 556 F.3d at 1274 (citing Posner, 178

9

F.3d at 1214). In assessing the sufficiency of the jurisdictional allegations, the Court must accept the factual allegations in the complaint as true. Licciardello v. Lovelady, 544 F.3d 1280, 1284 n.3 (11th Cir. 2008). If the plaintiff's factual allegations are sufficient to support the exercise of personal jurisdiction, the burden then shifts to the defendant to challenge the allegations with affidavits or other evidence to the contrary. Meier, 288 F.3d at 1269. The burden then shifts back to the plaintiff to produce evidence supporting jurisdiction. Id.

SPM alleges that the Court has personal jurisdiction over SICC because SICC's misleading advertising, Lanham Act violations, unfair competition, and deceptive and unfair trade practices were committed in Florida.[3] In relevant part, Florida's long-arm

---

[3] SICC argues that SPM cannot rely upon SICC's alleged Lanham Act violations to establish personal jurisdiction because SICC has not pled facts sufficient to state a claim for extraterritorial application of the Lanham Act. See Int'l Café v. Hard Rock Café Int'l, 252 F.3d 1274, 1278 (11th Cir. 2001). However, because SPM alleges other torts arising out of the same conduct, the Court need not decide at this time whether SPM has adequately pled its Lanham Act claim. See Koch v. Royal Wine Merchs., Ltd., 847 F. Supp. 2d 1370, 1380-81 (S.D. Fla. 2012) ("personal jurisdiction with respect to a [deceptive and unfair trade practices] claim may be may be attained over non-Florida parties pursuant to Florida's long-arm statute"); see also Office of the AG, Dep't of Legal Affairs v. Wyndham Int'l, 869 So. 2d 592, 598 (Fla. 1st DCA 2004) ("A deceptive or unfair trade practice constitutes a somewhat unique tortious act . . . .").

10

statute provides for personal jurisdiction over defendants who commit "a tortious act" within Florida.  Fla. Stat. § 48.193(1)(a)(2).  Florida courts have interpreted this provisions expansively, concluding that it encompasses a "nonresident defendant who commits a tort outside of the state that causes injury inside the state." Licciardello, 544 F.3d at 1283. Furthermore, an out-of-state defendant's physical presence in Florida is not necessarily required. Rather, a nonresident defendant can commit a tortious act in Florida "through the nonresident defendant's telephonic, electronic, or written communications into Florida," as long as the cause of action arises from those communications. Wendt v. Horowitz, 822 So. 2d 1252, 1260 (Fla. 2002).

Here, SPM alleges that SICC knowingly and intentionally misappropriated SPM's studies, test results, certifications, and photographs.  SPM further alleges that SICC used those marketing materials to tout SICC's competing products on SICC's publicly-available website and in sales presentations given in the United States. Finally, SPM alleges that its products compete with SICC's in the United States and, therefore, SICC's alleged misappropriation of SPM's marketing materials caused SPM injury in Florida.  These allegations place SICC squarely in the category of a "nonresident defendant who commits a tort outside of the state that causes injury inside the state" and, therefore, are sufficient

11

to invoke the Florida long-arm statute. Licciardello, 544 F.3d at 1283 (non-resident defendant's creation of a website which used Florida plaintiff's likeness without permission satisfied long-arm statute because "the alleged infringement clearly also occurred in Florida by virtue of the website's accessibility in Florida.").

**2. Constitutional Due Process**

Once the Florida long-arm statute has been satisfied, the court must then determine if exercising personal jurisdiction over the defendant would comport with the due process requirements of the Fourteenth Amendment. See, e.g., Meier, 288 F.3d at 1269. To do so, the court must consider two things. First, the court must determine whether the defendant has purposefully established such constitutionally significant contact with the state of Florida that he could have reasonably anticipated that he might be sued here in connection with those activities. If the defendant has done so, the court must determine whether the forum's interest in the dispute and the plaintiff's interest in obtaining relief are outweighed by the burden of the defendant having to defend himself in a Florida court. Licciardello, 544 F.3d at 1284.

**a) SICC's Contacts With Florida**

In cases involving intentional torts, a defendant will be found to have constitutionally significant contact with a forum state if he "(1) committed an intentional tort (2) that was

12

directly aimed at the forum, (3) causing an injury within the forum that the defendant should have reasonably anticipated." Oldfield v. Pueblo De Bahia Lora, S.A., 558 F.3d 1210, 1221 n.28 (11th Cir. 2009). When performing this analysis, the court must keep in mind that "it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985). Accordingly, "[s]o long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." Id. Indeed, intentional torts "may support the exercise of personal jurisdiction over the nonresident defendant who has no other contacts with the forum." Licciardello, 544 F.3d at 1285.

Here, SICC is alleged to have (1) intentionally misappropriated SPM's marketing materials; (2) used them to tout its competing products in the United States; and (3) injured SPM in Florida as a result. Taking these allegations as true, SICC's conduct establishes constitutionally significant contact with Florida. See Licciardello, 544 F.3d at 1288 ("The Constitution is not offended by the exercise of Florida's long-arm statute to effect personal jurisdiction over [defendant]" where defendant

"used plaintiff's trademarked name and [] picture on a website accessible in Florida in a manner to imply [plaintiff's] endorsement of defendant and his products.").

### b) Fair Play And Substantial Justice

Even where a defendant has purposefully established constitutionally significant contacts within the forum state, jurisdiction must further be evaluated in light of several other factors to determine "whether the extension of jurisdiction comports with traditional notions of fair play and substantial justice under the principles established in International Shoe and its progeny." Meier, 288 F.3d at 1276 (citing Posner, 178 F.3d at 1221); see also Licciardello, 544 F.3d at 1284. In determining whether jurisdiction would comport with traditional notions of fair play and substantial justice, the court looks at factors such as: the burden on the defendant of litigating in the forum, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. Meier, 288 F.3d at 1276; see also Burger King, 471 U.S. at 476; Licciardello, 544 F.3d at 1288. "Where these factors do not militate against otherwise permitted jurisdiction, the Constitution is not offended by its exercise." Licciardello, 544

14

F.3d at 1284 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)). In sum, the Court must "consider whether the forum's interest in this dispute and the plaintiff's interest in obtaining relief are outweighed by the burden on the defendant of having to defend himself in a Florida court." Licciardello, 544 F.3d at 1284.

Here, the Court finds that Florida has an interest in resolving the alleged misappropriation of a Florida company's trademarks and marketing materials. The law is clear that "Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida." Licciardello, 544 F.3d at 1288. While the Court recognizes that there is some burden placed on non-resident defendants required to litigate in Florida, and that the burden is especially great for an international defendant, Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. 102, 114-15 (1987), such a burden can largely be eliminated by the use of telephonic hearings and conferences. See Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 259 (11th Cir. 1996) ("The burden on the defendants occasioned by litigating outside of Michigan is not slight, but modern methods of transportation and communication reduce this burden significantly."). Moreover, any burden to SICC is offset by the burden to SPM should it be required to litigate in Germany. Indeed, the Eleventh Circuit has held that a "Florida

15

plaintiff, injured by the intentional misconduct of a nonresident expressly aimed at the Florida plaintiff, is not required to travel to the nonresident's state of residence to obtain a remedy." Licciardello, 544 F.3d at 1288; see also Calder v. Jones, 465 U.S. 783, 790 (1984) ("An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California."). Accordingly, on balance the Court finds that constitutional concerns of fair play and substantial justice are not offended by the exercise of personal jurisdiction over SICC.

Accordingly, it is now

**ORDERED:**

1. Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim Upon Which Relief Can be Granted and Motion to Quash Plaintiff's Summons for Insufficient Service of Process (Doc. #12) is **GRANTED IN PART and DENIED IN PART.**

2. The portion of the motion seeking to dismiss the Complaint for lack of personal jurisdiction is **GRANTED** as to Defendant Waldemar Walczok only and is otherwise **DENIED.** If Plaintiff wishes to assert an alternative basis for personal jurisdiction over Defendant Waldemar Walczok, it may file an Amended Complaint within **fourteen (14) days** of this Opinion and Order.

3. The portion of the motion seeking to quash Plaintiff's summons for insufficient service of process is **GRANTED.** Plaintiff is hereby granted an additional **thirty (30) days** to properly effectuate service of process. If Plaintiff files an Amended Complaint as authorized above, the thirty-day period to effectuate service shall begin on the date the Amended Complaint is filed.

4. **DONE AND ORDERED** at Fort Myers, Florida, this  13th  day of November, 2015.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


Copies: Counsel of record